# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

### DOCKET NO. 3:08-CV-106-FDW

| | | |
|---|---|---|
| **JEAN SCOTT,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **ORDER** |
| **vs.** | ) | |
| | ) | |
| **JOHN POTTER, Postmaster General,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

NOW BEFORE THE COURT is Defendant's motion for summary judgment (Doc. No. 17). Defendant argues that there are no material facts in dispute and that Plaintiff's Title VII sex discrimination claims fail as a matter of law. The Court agrees, and therefore grants Defendant's motion. See Fed. R. Civ. P. 56(c) (Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law").

The pertinent background facts are as follows: Plaintiff, a female, was terminated from her employment with the United States Postal Service on or about 25 June 2001. Her termination resulted from the fact that in May 2001 she requested three days' emergency leave to attend a funeral, and upon her return to work she submitted a funeral program which was soon discovered to have been altered to provide false justification for her leave request.[1] Specifically, the program was altered to list Plaintiff as a blood relative of the deceased (in fact, the deceased was Plaintiff's ex-husband's father) and to change the date of the funeral to coincide with the dates for which she

---

[1] The plainly altered funeral program is attached as an Exhibit to this Order.

requested leave (in fact, the funeral had already taken place by the time her leave period began). Plaintiff at first admitted to altering the funeral program, but now maintains that she does not know how the altered program came into the Postal Service's possession and that she only admitted to falsifying the document under pressure from her union representative. Nowhere is it contended that Plaintiff lacked good cause to request emergency leave under the circumstances or that she did not actually travel to St. Louis in order to be with family during this period of grief; rather, the charge of misconduct is that she acted dishonestly in representing the grounds for requesting the absence and in falsifying the document used to justify the absence, and it was on this basis that she was terminated.

Since no direct evidence of discrimination is presented in this case, Plaintiff proceeds under the burden-shifting method of circumstantial proof established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Because this case involves an allegedly discriminatory disciplinary action, the standard formulation of the *prima facie* case of discrimination espoused in McDonnell Douglas, which requires a plaintiff to show that she was performing her job at a level sufficient to satisfy her employer's legitimate expectations, is eschewed in favor of an alternative formulation which acknowledges that unlawful discrimination can occur when employees are unequally castigated for their workplace misconduct. See Cupples v. AmSan, LLC, No. 3:04-CV-574, 2007 WL 1075178, at *5-*6 (W.D.N.C. Mar. 30, 2007). Therefore, to make out a *prima facie* case of discrimination, Plaintiff must show that: (1) she is a member of a protected class (female); (2) the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) she suffered more severe discipline for her misconduct as compared to employees outside the protected class. Taylor v. Virginia Union Univ., 193 F.3d

2

219, 234 (4th Cir. 1999).

In this case, Plaintiff primarily bases her claim of discrimination on the fact that another Postal Service employee, Pierre Davis (a male), committed a similar act of misconduct but was subjected to a lesser sanction. In support of this argument, Plaintiff shows that in July 2001 Mr. Davis falsified a doctor's note in order to obtain sick leave over the July 4 holiday. Because this was a comparable act of misconduct committed by a member of the opposite sex, Plaintiff satisfies the first and second prong of her *prima facie* case. However, she cannot satisfy the third prong (disparate treatment) because Mr. Davis was also terminated from the Postal Service for improper conduct, and his termination was effectuated by the same supervisor (Wendy Helms) who similarly terminated Plaintiff for her comparable act of misconduct. Thus, there is no *prima facie* evidence of sex discrimination in Ms. Helms' decision to terminate Plaintiff.

As it turned out, Mr. Davis's employment with the Postal Service was ultimately reinstated through a grievance process established by the Collective Bargaining Agreement, whereas Plaintiff's removal was ultimately upheld through the same process. According to the uncontroverted affidavit of the Human Resources Manager responsible for overseeing the grievance process, Mr. Davis was reinstated not because just cause for removal was lacking but rather because of a procedural flaw in the grievance process that would likely have produced adverse consequences at arbitration. No such procedural flaws existed in Plaintiff's case. Therefore, Plaintiff and Mr. Davis were not similarly situated for purposes of the treatment they received during the post-termination grievance process, and the Postal Service's decision to reinstate Mr. Davis while affirming the removal of Plaintiff is not *prima facie* evidence of sex discrimination. See Ricks v. Riverwood Intern. Corp., 38 F.3d 1016, 1019 (8th Cir. 1994) ("The burden is on the plaintiff to prove he was similarly situated in all relevant

respects to a more favorably treated employee.")

Plaintiff also attempts to create a dispute of material fact over the issue of whether she actually falsified the funeral program. This, however, is largely immaterial for purposes of her Title VII claims. Demonstrating that the factual basis underpinning her termination ultimately proves to be unsound or unfounded does not create liability for her employer under federal law, so long as the reason was not pretext for discrimination. As stated by the Fourth Circuit, a federal court

> does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination. . . . Our sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quotations and citations omitted). Furthermore, an employer's nondiscriminatory reason for termination must be assessed "by examining the facts as they appear to the person making the decision to terminate;" the dispositive question therefore is "not the factual accuracy of the [allegation of misconduct] but whether [the employer] reasonably 'perceived' that it was accurate." Tesh v. U.S. Postal Serv., 349 F.3d 1270, 1273 (10th Cir. 2003) (holding that so long as the Postal Service reasonably believes an employee has been dishonest, it is irrelevant whether this belief is erroneous).

In this case, Defendant had reasonable and legitimate grounds to terminate Plaintiff because at the time the decision to terminate was made she had admitted to falsifying the document she submitted to justify her leave request. Plaintiff cannot build a discrimination case on the fact that she now wants to change her story. Because Defendant had grounds reasonably to believe that

Plaintiff had committed serious misconduct, and no evidence is presented to the effect that this belief was not truly the reason for terminating her employment, Plaintiff has no meritorious claim under Title VII even if she is correct in maintaining that she is actually innocent of the misconduct with which she was charged.

Because Plaintiff has failed to make out a *prima facie* case of sex discrimination or to demonstrate the existence of a genuine issue of material fact as to the legitimacy of Defendant's decision to terminate, summary judgment is properly awarded to Defendant. Therefore, Defendant's motion for summary judgment (Doc. No. 17) is GRANTED and the Clerk is DIRECTED to close this case.

IT IS SO ORDERED.

Signed: April 1, 2009

Frank D. Whitney
United States District Judge

Exhibit 3
RMP
2-3-09

Submitted by Mrs Scott

## Homecoming

Sunrise
June 30, 1922

Sunset
May 17, 2001



## Mr. Jessie James Watson

Wednesday May 17, 2001
11:00 A.M.

Mt. Nebo Missionary Baptist Church
4981 Theodore
Saint Louis, Missouri 63115

Rev. Dwight Davis
Pastor/Officiant

RECEIVED
MAY 2 1
SOURCE MANAGEMENT
EXHIBIT 6-4

### Note Of Appreciation

The family of the late Jessie Watson wishes to express sincere appreciation and heartfelt thanks for the condolences, flowers, cards, visits and other expressions of sympathy shown during our time of bereavement. A special thanks to the staff of The Tower Village Nursing Home, the Ruskin Avenue Neighborhood Association and the Mt. Nebo Family. You all have helped to lighten our burden of sadness and we wish each of you to know that we shall remain ever grateful for your kindness and thoughtfulness.

### What God Hath Promised

God hath not promised skies always blue, flower-strewn pathways all our lives through; God hath not promised sun without rain, joy without sorrow, peace without pain. But God hath promised strength for the day, rest for the labor light for the way, grace for the trials, help from above, unfailing sympathy, undying love.

### Pallbearers

Officer Byron Watson    Officer Dwayne George
Anthony Watson    Norsell Duvenport
Adolphus Watson    James Robinson

### Honorary Pallbearers

Jesse J. Watson, IV    Brandon L. Binton
Thomas J. Watson, Jr.    Pleaz Davenport
Thomas Carruth

### Interment

Jefferson Barrack National Cemetery
(1:30 P.M.)

We Entrusted Our Loved One To:
A.L. Beal Mortuary
"Service With Dignity"
4746 West Florissant Ave. • St. Louis, Missouri 63115
(314) 389-9675
Mr. Charles Henderson, CEO
Pastor Darryl Rainey, General Manager



## Memories

Memories like the corners of our hearts are the things that keep us going. Memories of our loving father will be replayed over and over by us as long as we shall live. The things that he left behind shall never fade away. He taught us that being righteous and fair are powerful investments in our lives that will never fade. We shall store in our mind the wonderful life that we have shared together.

Just who was Jessie Watson? He was born the youngest child to the union of Sussie Adams Watson and Jesse Watson, Sr. in Clarendon, Arkansas on June 30, 1922. He received his education in Arkansas and on July 22, 1943 was united in holy matrimony to Delphia Butler (who preceded him in death last November). To this union, five children were born: Della, Jesse III (who also preceded him in death), Charles (who died in infancy), Eddie and Thomas. He was a devoted husband, a loving father, a dear grandfather, great-grandfather, friend and neighbor.

Jessie was a World War II veteran who served with "The Big Red One". He retired from the workforce after an extensive career as a construction worker and member of the Parks and Recreation Department for St. Louis City. He was also an active member of the Neighborhood Association.

At an early age, he confessed his faith in Christ at the Baptist Grove Church in Clarendon, Arkansas. After moving to St. Louis, Missouri he was united with the Mt. Tabor M.B. Church where he served as a Deacon and later with Mt. Nebo M.B. Church.

The favorite thing that he loved was gardening and up to age 70, he maintained a beautiful vegetable garden and layed his patio and a great many of his neighbors patios.

The trumpet sounded for Jessie on Monday, May 10, while he was at St. Louis University Hospital. The melodies of his spirit and loving kindness will be greatly missed.

To cherish his memories are, his brother, Adolphus (Jeanjean) Watson of St. Louis, Missouri, his daughter, Della (Cester) Binion of Zenexa, Kansas, sons, Eddie and Thomas of Kansas City, Missouri, five grandchildren, Laquita, Jesse IV, Andrea all of St. Louis, Missouri, of Charlotte, North Carolina, Brandon of Zenexa, Kansas and one great-grandchild, Mykinli. A daughter-in-law, Judy Watson of St. Louis, Missouri. Four sisters-in-laws, four brothers-in-law and a host of nieces, nephews, cousins and friends.

## Order Of Service

Processional

Selection ...................................................... Senior Choir

Old Testament .......................................................... Minister

New Testament .......................................................... Minister

Prayer

Selection ...................................................... Senior Choir

Acknowledgment of Cards, Telegrams & Other Expressions of Sympathy

Condolences

Solo ......... "Precious Lord" ......... Sister, Johnnie Davenport-Carruthers

Solo .......................................................... Mother Mary O'Neal

Life Reflections .......................................................... Soft Music

Eulogy .......................................................... Pastor Dwight A. Davis

Viewing of Remains

Benediction

Recessional

EXHIBIT
6-5